## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CURTIS CORY et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-706-G** |
| | ) | |
| **CIMAREX ENERGY COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER

Now before the Court is the Motion to Dismiss (Doc. No. 9) of Defendant Cimarex Energy Company ("Cimarex"). Plaintiffs Curtis Cory and Cheryl Cory ("Plaintiffs") have responded in opposition (Doc. No. 11) and Cimarex has replied (Doc. No. 12). For the reasons set forth below, the Motion is granted.

### BACKGROUND

The parties in this case are successors-in-interest to an oil and gas lease (the "Lease") burdening an 80-acre tract of Section 25, Township 15 North, Range 9 West in Kingfisher County, Oklahoma (the "Leased Property"). Compl. (Doc. No. 1) at 1-2. The Lease was executed on March 14, 1977, between Plaintiffs' predecessors, as lessors, and Cimarex's predecessor, as lessee. *See* Lease (Doc. No. 9-1). It provides for an initial term of three years, to continue thereafter so long as oil or gas "is or can be produced from [the Leased Property] or from land within which [the Leased Property] is pooled." *Id.* ¶ 2.

The Lease includes a "pooling" clause, which provides, in part:

> Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease

or leases in the immediate vicinity thereof, when in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises or in order to obtain a larger production allowable from any governmental agency having control over such matters, *such pooling . . . . to be into a unit or units not exceeding 160 acres each in the event of an oil well*, or into a unit or units not exceeding 640 acres each in the event of a gas well.

*Id.* ¶ 6 (emphasis added).  At issue in this case is the 160-acre pooling restriction reflected in the italicized language above.

On July 23, 2015, the Oklahoma Corporation Commission ("OCC") entered Order No. 643680, establishing Section 25, Township 15 North, Range 9 West as a 640-acre horizontal well unit for the Mississippian common source of supply (the "Unit").[1]  *See* OCC Order 643680 (Doc. No. 9-2) at 2-3.  The OCC specifically found that creation of the Unit was "necessary to protect correlative rights, prevent . . . waste[,] and obtain the greatest ultimate recovery of oil and gas."  *Id.* at 8.  Pursuant to Order No. 643680, Cimarex drilled and completed the Loretta 1-25H Well (the "Loretta Well"), a horizontal oil well, in the Unit.

Plaintiffs filed the instant action on July 22, 2020, asserting claims against Cimarex for breach of contract, conversion, and declaratory judgment.  *See* Compl. at 1-3.  All three claims are predicated on the allegation that Cimarex drilled the Loretta Well in violation of the Lease's 160-acre pooling restriction.

---

[1] The Court may take judicial notice of OCC orders and proceedings.  *See Sinclair Oil & Gas Co. v. Bishop*, 441 P.2d 436, 441-42 (Okla. 1967).

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) prescribes that a defendant may seek dismissal when the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim that is plausible on its face." (internal quotation marks omitted)).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

ANALYSIS

Plaintiffs' core contention—and the premise for each of its three claims—is that Cimarex violated the Lease's 160-acre pooling restriction by drilling the Loretta Well, an oil well, on a 640-acre unit encompassing the Leased Property.  *See* Compl. at 1-3; Pl.'s Resp. (Doc. No. 11) at 7-10.  Cimarex argues, and the Court agrees, that the 160-acre

pooling restriction was "superseded" by OCC Order No. 643680, and therefore, Plaintiffs' claims fail as a matter of law.  Def.'s Mot. (Doc. No. 9) at 5-10.

I.  *Breach of Contract*

As both sides acknowledge, the impact, if any, of Order No. 643680 on Cimarex's duty to comply with the Lease's 160-acre pooling restriction hinges on the intent of the original contracting parties.  *See* Def.'s Mot. at 6-9; Pl.'s Resp. at 8-9; *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018) (explaining that, under Oklahoma law, the "paramount objective" of contract interpretation is "to ascertain and give effect to the intention of the parties").[2]  According to Cimarex, it was the intent of the original parties that the pooling restrictions would yield to any conflicting unitization order issued by the OCC.  *See* Def.'s Mot. at 6-9.  To support this position, Cimarex relies primarily on *Hladik v. Lee*, 541 P.2d 196 (Okla. 1975), and *Oklahoma Natural Gas Company v. Long*, 406 P.2d 499 (Okla. 1965).[3]

In *Hladik*, an oil and gas lessee pooled ten separately owned tracts of land to create a 480-acre "declared" unit.  *Hladik*, 541 P.2d at 197.  The OCC subsequently issued a spacing order creating a 160-acre "compulsory" unit within the acreage comprising the

---

[2] A federal court exercising diversity jurisdiction applies the substantive law of the forum state—here, Oklahoma.  *See Clark v. State Farm Mut. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005).  Under Oklahoma statute, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Okla. Stat. tit. 15, § 162.  As the parties do not urge the applicability of any other state's law, the Court will interpret the Lease in accordance with the laws of Oklahoma, the place of contract performance.

[3] *Superseded by statute on other grounds as recognized in Hall v. Galmor*, 427 P.2d 1051, 1071 & n.106 (Okla. 2018).

declared unit. *Id.* The issue was how to distribute royalties derived from gas production on the compulsory unit. *See id.* The Oklahoma Supreme Court held that the compulsory unit superseded the declared unit, and royalties should be paid accordingly—that is, only those lessors whose acreage was included in the compulsory unit were entitled to share in production. *See id.* at 198-99. The court reasoned that oil and gas leases are negotiated against the backdrop of the OCC's regulatory authority, of which the parties are presumably aware; thus, in the absence of an express agreement providing otherwise, it must be assumed that the parties intended that a valid exercise of such authority would supersede any and all conflicting lease provisions. *See id.* The court found further support for its holding in the language of the lease itself, which reflected the lessors' intent that its acreage be pooled when necessary to promote conservation—an objective that aligned with that of the OCC in issuing its order creating the compulsory unit. *See id.*

At issue in *Long* was an oil and gas lease requiring the lessee to commence the drilling of a well on the leased property within one year's time or otherwise pay delay rentals to the lessor. *See Long*, 406 P.2d at 501. Subsequent to the lease's execution, the OCC issued a spacing order creating a 640-acre unit that embraced the leased property, and a well was drilled pursuant thereto. *Id.* In an action to cancel the lease and quiet title to the leased property, the lessor argued that the lease had expired on its own terms once the lessee ceased paying delay rentals because the lessee had failed to drill a well on the leased property as promised. *Id.* The lessor argued that the well drilled in the unit did not hold the lease because it was not drilled on his specific property. *Id.* at 501-02. The court rejected this argument, reasoning that "[w]hen this lease was entered into the parties knew

of the authority of the Oklahoma Corporation Commission to enact well-spacing regulations in furtherance of conserving oil and gas, and they contracted subject thereto." *Id.* at 503.  The court held that the spacing order superseded the conflicting lease provision and, therefore, production from the well operated to perpetuate the lease.  *See id.* at 501.

The Court agrees with Cimarex that *Hladik* and *Long* foreclose Plaintiffs' breach-of-contract claim.  These decisions teach that the OCC's regulatory authority, e.g., to space wells for the conservation of oil, gas, and other natural resources, is "incorporated in[to]" private oil and gas leases "by operation of law."  *Id.* at 504.  It is therefore the expectation and intention of the contracting parties that a valid exercise of the OCC's regulatory authority will supersede conflicting lease provisions of the kind at issue here.  *See id.*  This principle is especially true as applied to a pooling clause which identifies, as its primary objective, "the conservation of oil, gas or other minerals."  Lease ¶ 6; *see Hladik*, 541 P.2d at 198.

Plaintiffs argue that *Hladik* is inapposite because "there is no declared unit at issue" in this case.  Pl.'s Resp. at 8.  But this argument raises a distinction without a difference. *Hladik* did not turn on the existence of a declared unit but instead on the existence of a lease provision *permitting the formation of* a declared unit.  *See Hladik*, 541 P.2d at 198. Such a provision is superseded by a conflicting OCC order irrespective of whether the lessee has exercised the power granted thereunder.  The Court agrees with Defendant that "[t]he OCC's power to supersede and regulate oil and gas development cannot turn on whether a voluntary pooling provision in a lease has been exercised."  Def.'s Reply at 12.

6

Plaintiffs next point to language from *Hladik* stating that "the parties 'could have executed [an] express agreement to share all royalty upon production from [the] declared unit without regard to any subsequent orders of the Corporation Commission.'" Pl.'s Resp. at 8 (first alteration in original) (quoting *Hladik*, 541 P.2d at 198)). This language, Plaintiffs imply, supports the enforceability of the 160-acre pooling restriction "without regard to" OCC Order No. 643680. *Id.* The Court disagrees. *Hladik* and other cases recognize that parties to an oil and gas lease may contract regarding ancillary details (e.g., the distribution of royalties) in the event the leased premises become subject to a unitization order. But contrary to Plaintiffs' suggestion, parties do not have carte blanche to enter into agreements that "imping[e] upon the authority of the [OCC] to make orders establishing spacing and drilling units." *Nisbet v. Midwest Oil Corp.*, 451 P.2d 687, 697 (Okla. 1968).

Accordingly, the Court holds that Plaintiffs have failed to state a claim for breach of contract upon which relief can be granted.

## II.    *Conversion and Declaratory Judgment*

Plaintiffs' remaining claims for conversion and declaratory judgment are predicated on a finding that Cimarex drilled and produced oil from the Loretta Well in violation of the Lease. *See* Compl. at 2 (alleging that Cimarex is converting Plaintiffs' property by "producing hydrocarbons from the Loretta Well in violation of the Lease"); *id.* at 3 (asserting that Plaintiffs "are entitled to a determination that the Loretta Well does not perpetuate the Lease" because it "was drilled and is being operated in violation of the [L]ease"). Since Plaintiffs have not plausibly alleged a violation of the Lease, as detailed above, Plaintiffs have failed to state a claim for conversion or declaratory judgment.

CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc. No. 9) is GRANTED. A separate judgment shall be entered.

IT IS SO ORDERED this 23rd day of March, 2021.

CHARLES B. GOODWIN
United States District Judge